**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BRANDON E. STACEY,                              Case No. 1:14-cv-160

                Plaintiff,                      Dlott, J.

    v.                                          Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Brandon E. Stacey filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents multiple claims of error for this Court's review.  The Commissioner filed a response, to which Plaintiff filed a reply.  As explained below, the ALJ's finding should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Social Security ("SSI") on January 13, 2011, alleging disability beginning August 30, 2010 based upon a combination of mental and physical impairments.  Plaintiff was born in 1983, has a high school education, and was considered a younger individual through the date of the ALJ's decision.

Plaintiff's DIB and SSI applications were denied initially and on reconsideration, and he timely requested an evidentiary hearing.  On September 10, 2012, Plaintiff, through counsel, appeared and testified at a hearing in Cincinnati, Ohio held before

Administrative Law Judge ("ALJ") Kristen King (Tr. 34-68). An impartial vocational expert also appeared and testified. On September 27, 2012, ALJ King issued an unfavorable written decision. (Tr. 14-27).

The ALJ determined that Plaintiff has the following severe impairments: "asthma; obesity; depression; a bipolar disorder; a personality disorder; and an attention deficit-hyperactivity disorder." (Tr. 16). However, the ALJ held that Plaintiff does not have an impairment or combination of impairments that would meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx. 1. (Tr. 17). Instead, he found that Plaintiff retains the residual functional capacity ("RFC") to perform a range of medium work, except:

> [T]he claimant should avoid concentrated exposure to extreme cold, extreme heat, poorly ventilated areas, and environmental irritants, such as fumes, odors, dusts, and gases. The claimant is limited to simple, routine, and repetitive tasks in a work environment with no fast-paced work or strict production quotas, and no constant production rate pace work, but instead goal-oriented work. Further, the claimant is limited to low stress work, defined as no more than occasional changes in the work setting. The claimant could occasionally interact with co-workers and supervisors with no tandem tasks. Finally, he could interact with the public no more than occasionally, but with no transactional interaction, such as sales or negotiation.

(Tr. 20).

The ALJ concluded that Plaintiff was not capable of performing any of his past relevant work as server, line worker, restaurant employee, or ride attendant. (Tr. 25). However, considering Plaintiff's age, education, work experience and RFC, and based upon the testimony of the vocational expert, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including floor waxer, industrial cleaner, warehouse worker, machine tender, housekeeper, and

laundry folder. (Tr. 26-27). The Appeals Council denied Plaintiff's request for further review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

In his assertions of error before this Court, Plaintiff primarily argues that he is disabled based upon his mental limitations. He contends that the ALJ improperly gave less weight to his treating psychiatrist and counselor than to a consulting psychologist who had reviewed fewer than a quarter of Plaintiff's mental health records. Plaintiff asserts several additional errors, including alleged errors relating to the ALJ's assessment of his mental RFC and/or the ALJ's failure to find that he met or equaled Listing 12.04(C)(2).. The undersigned agrees that the ALJ committed reversible error; therefore, remand is recommended.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B. Specific Assertions of Error and the Defendant's Response

Plaintiff's Statement of Errors primarily argues that the ALJ erred: (1) by failing to give controlling weight to the opinions of Plaintiff's treating psychiatrist and master's level counselor/therapist; and (2) by giving the most weight to non-examining consultants. However, Plaintiff includes in his Statement of Errors several additional but less well-developed arguments that the ALJ erred both at Step 3 (by failing to find that Plaintiff met a listed impairment) and at Step 5, by failing to properly assess his mental RFC and by improperly relying upon VE testimony.

Separate from the Commissioner's response to Plaintiff's four asserted errors, the Defendant spends a significant and - in this Court's view - inappropriate portion of his response focusing on records that reflect Plaintiff's history of drug and alcohol abuse. None of those records are particularly relevant to this Court's analysis of the issues presented. Aside from the fact that Plaintiff's alleged onset of disability arguably post-dates most, if not all, of his prior drug and alcohol issues, the ALJ clearly did not rely upon that history to deny benefits, and did not even list such abuse or addition as a severe impairment.

This Court's affirmance or reversal of the ALJ's opinion is – with rare exceptions – limited to the basis for the decision as expressed by the Commissioner in his last written decision. Here, the decision of the ALJ barely references Plaintiff's addiction history – mostly in commenting that Plaintiff had once self-medicated with drugs in lieu of taking mental health medications, and following up with a comment that Plaintiff had remained sober and clean from drugs and alcohol since approximately August 2010. (Tr. 21). The ALJ expressly "commend[ed] the claimant for his sustained sobriety." (Tr.

23-24).  For that reason, Plaintiff's prior drug and alcohol issues are not relevant to the four claims discussed below.

### 1. Medical Opinion Evidence

Most of Plaintiff's assertions of error pertain to the weight that the ALJ gave to the medical opinion evidence.  Although loosely stated as different claims, at the heart of these claims is Plaintiff's contention that the ALJ erred by giving greater weight to the medical opinion evidence provided by non-examining consultants than to the opinions of Plaintiff's treating psychiatrist and therapist.  Social security regulations generally require "controlling weight" to be given to the opinions of treating physicians, with less weight to be given to the opinions of consultants.  In addition, the opinions of examining consultants are generally entitled to greater weight than are the opinions of non-examining consultants.  *See* 20 C.F.R. §1527(c)(1); *see also Gayheart v. Com'r*, 710 F.3d 365, 375-376 (6th Cir. 2013).

### a. *Blakley* Error – Consulting Psychologist

In April 2011, Plaintiff had a consultative exam with psychologist George Lester, Psy.D.  (Tr. 704-711).  Dr. Lester assigned Plaintiff a GAF score of 50 at that time, but the ALJ found that he "offered no rationale for the score."  (Tr. 21).  The ALJ gave "less weight" to his assessment based upon his "somewhat ambiguous conclusions" and alleged overreliance upon Plaintiff's subjective complaints.  (Tr. 24).  The same weight – arguably no weight at all - was given to the opinions and assessment of Plaintiff's treating psychiatrist, Dr. Khalily, and therapist Mr. McClure.  Thus, the opinions of the only three mental health providers who actually examined Plaintiff prior to evaluating his mental RFC were largely discounted.

6

By contrast, the ALJ stated that she was placing "great weight on the assessments provided by the [non-examining] State agency psychological consultants. See Exhibits 7A & 8A." (Tr. 24). The ALJ's statement reflects a typographical error. Although Exhibit 7A contains a psychological opinion following a records review by Robelyn Marlow, Ph.D., (Tr. 105-109), Exhibit 8A is an assessment by a non-examining primary care consulting physician, Lynee Torello, M.D. (Tr. 126). Both assessments are dated August 2011.[1]

The undersigned finds reversible error in the ALJ's decision to give the greatest weight to Dr. Marlow's assessment. Dr. Marlow could not have reviewed records later than June 29, 2011, and therefore did not have access to most of Plaintiff's relevant treatment records. In fact, Dr. Marlow's report reflects that she placed "great weight" on the assessment of Dr. Lester, whose assessment the ALJ herself heavily discounted. (Tr. 107). As Plaintiff points out, Dr. Marlow only "had access to 44 pages of treatment records; she missed 138 pages." (Doc. 10 at 16). Many of those records reflect Plaintiff's ongoing difficulties with anger management, anxiety, and focus, including but not limited to specific anxiety about, and a history of confrontation relating to, any work environment. Dr. Marlow also did not review records that show Plaintiff's difficulties in attending a job training program. She did not have access to Plaintiff's June 2012 report that he carries a fishing knife with him and would "gut" anyone who threatened him. (Tr. 958). Perhaps most importantly, Dr. Marlow was unable to review the detailed

---

[1]Defendant references a May 2011 psychological assessment by Tonnie Hoyle, Psy.D. (Tr. 75-80). The ALJ did not rely upon that assessment, which also was based upon Dr. Lester's assessment. (Tr. 78). Even if the ALJ had relied on Dr. Hoyle, her reliance would have been misplaced for the same reasons discussed with respect to Dr. Marlow's assessment.

assessments provided by Plaintiff's long-term therapist, Mr. McClure,[2] and treating psychiatrist, Dr. Khalily.

In *Blakley v. Com'r of Social Security,* the Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency ... consultants...may be entitled to greater weight than the opinions of treating or examining sources." *Blakley*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). However, the court reversed because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consultant's opinions. *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Under *Blakley*, then, the ALJ's decision to credit the opinion of a non-examining consultant like Dr. Marlow who has failed to review a complete record can be affirmed, but only if she articulated her reasons for doing so.[3] Absent such an explanation in cases involving a consultant who has reviewed an incomplete record, the ALJ's opinion still may be affirmed if substantial evidence still supports the opinion, and any error is deemed to be harmless or de minimis. However, rejecting a medical opinion solely because a consulting physician disagrees is not an adequate basis for rejecting a treating physician's opinion. *See Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

---

[2]Given Plaintiff's report of pulling a knife on a fellow AA member, Mr. McClure's reasoned, "It would be quite difficult for pt to maintain any type of gainful or sustained employment without learning how better to regulate and manage both his depression and anger." (Tr. 1032). Another more recent note reflected Plaintiff's "habit of staying in bed 2 days out of the week" for the past several months. (Tr. 1034).

[3]Ironically, when addressing Plaintiff's physical limitations, the ALJ gave only "some weight" to the assessments offered by non-examining consultants precisely because they did not have access to Plaintiff's complete records. Thus, she noted that their assessments "were based on information contained in the record at the time...and no evidence generated or provided after that date [was]

8

Here, the ALJ relied most heavily on Dr. Marlow's opinion, even though Dr. Marlow was a non-examining consultant who had not reviewed Mr. McClure's detailed clinical notes, the records of Plaintiff's treating psychiatrist, or most of the records that pertained to Plaintiff's significant mental health issues.  Yet, the ALJ failed to discuss or even acknowledge the fact that Dr. Marlow had relied upon a woefully incomplete record.  As discussed below, the ALJ's stated reasons for rejecting the opinions of the examining consultant, Plaintiff's therapist, and his treating psychiatrist are not wholly supported by the record.  When that record is considered as a whole, the lack of access by the consulting non-examining psychologist to most of the significant treatment records cannot be considered harmless.

### b. Treating Psychiatrist Dr. Khalily

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The rationale for what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

considered by the state examiners."  (Tr. 24).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). The treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley*, 581 F.3d at 406. If an ALJ does not give controlling weight to a treating physician's opinion, she must articulate the weight given to the opinion, and provide "good reasons" for that decision. *Id.* (additional citations omitted).

In this case, the ALJ gave very little weight to the May 2, 2012 opinions of Plaintiff's treating psychiatrist, Dr. Khalily. (*See* Tr. 979-981). Dr. Khalily's assessment indicated that Plaintiff would have marked to extreme limitations in 14 out of 16 work-related categories, including relating to co-workers, functioning independently, demonstrating reliability, interacting with supervisors, and persisting at work-like tasks. (Tr. 979-980). Such severe limitations are inconsistent with the mental RFC determined by the ALJ, and would have precluded all work.

The ALJ explained the basis for her decision as follows:

According to Dr. Khalily, the claimant would experience marked to extreme difficulties completing most tasks consistent with unskilled work, and would miss three to five days of work per month. *Id.* Although Dr. Khalily is a treating source, her opinion is not entitled to controlling weight, or even some weight, because it is neither well supported, nor consistent with the substantial evidence of record as discussed above. See Social Security Ruling 96-2.

Notably, Dr. Khalily's assessment appears inconsistent with the treatment notes from CCHB. For example, Dr. Khalily opined that the claimant is "markedly" limited in his ability to function independently and demonstrate daily reliability; yet, the claimant has regularly attended five to six AA meetings per week and completed a job readiness program. He also cares for his ailing father, shops with his mother, and uses public transportation, all of which belie Dr. Khalily's opinion that the claimant

could not function independently. In fact, just a few weeks after her assessment, the claimant's counselor at CCHB continued to encourage the claimant to obtain employment or volunteer. See Exhibit 31F p6 & p10. Moreover, as discussed above, Dr. Khalily routinely assigned a symptom severity of five or less, which is commensurate with an ability to sustain unskilled work activity. Given these inconsistencies, it is not unreasonable to question whether Dr. Khalily is trying to be an advocate for the claimant regarding his claim for disability benefits even if the treatment notes and other evidence suggest some improvement. Although the undersigned considered Dr. Khalily's opinion, the terms of her assessment are not well taken.

(Tr. 24-25).

At the outset, the ALJ's suggestion that a treating physician's opinions may be imbued with bias in favor of the disability claimant is a concept that strikes this Court as somewhat at odds with the treating physician rule. However, such comments do not necessarily reflect any error. U.S. District Judge Rose recently wrote about similar comments:

Although the ALJ's statement is perhaps questionable in nature—and the Court makes no finding as to the accuracy of the statement in this particular case—the language in question appears to be a boilerplate paragraph occasionally utilized by ALJs in this Circuit. *See, e.g., King v. Astrue,* No. 2:12–cv–165, 2012 WL 4361445, at *9, 2012 U.S. Dist. LEXIS 136960, at *24 (S.D.Ohio Sept. 25, 2012); *Rodgers v. Comm'r of Soc. Sec.,* No. 1:10–CV–434, 2011 WL 4064252, at *10, 2011 U.S. Dist. LEXIS 103266, at *29 (W.D.Mich. Aug. 16, 2011); *Maggart v. Astrue,* No. 2:08–cv–5, 2009 WL 577326, *7, 2009 U.S. Dist. LEXIS 127665, at *17 (M.D.Tenn. Feb. 11, 2009); *May v. Astrue,* No. 4:08–CV–77, 2009 WL 6093302, at *7, 2009 U.S. Dist. LEXIS 123358, at *23–24 (E.D.Tenn. Dec. 30, 2009).

In *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399 (6th Cir.2009), the Sixth Circuit encountered an ALJ's decision which utilized the exact same [comments]… as stated above. The *Blakley* court did not hold that it is improper for an ALJ to examine a treating physician's motives, but instead faulted the ALJ in that case for rejecting a physician's opinion *solely* on the ground that the doctor's motives were suspect. *Id.* at 408.

*Yates v. Colvin*, 940 F. Supp. 2d 664, 675-76 (S.D. Ohio 2013).  Because the ALJ in this case did not reject Dr. Khalily's opinions solely based on the ground that her motives were suspect, the undersigned finds the remarks about her presumed "advocacy" to be of no real consequence.  The ALJ's primary reason for rejecting Dr. Khalily's opinions was because she found them to be inconsistent with the record and not well supported.  However, Plaintiff argues that the ALJ's analysis is flawed and does not satisfy the "good reasons" standard, because Dr. Khalily's opinions were in fact both consistent with the record and well supported.

As Plaintiff points out, Dr. Khalily is a treating physician with a well-established relationship, having treated Plaintiff since June 2011, following Plaintiff's treatment by a psychiatrist in the same practice group since November 2010.  Plaintiff argues that Dr. Khalily's opinion that he is "markedly" limited is not inconsistent in Plaintiff attending multiple AA meetings and/or completing a job readiness program, given that "markedly" limited is described as being effective only between 50-75% of the time.  (Tr. 979).  Plaintiff was consistently driven to the AA meetings by a friend, and there is evidence that he continued to have difficulty with anger management at those meetings.  (Tr. 958, 1032).  Additionally, Plaintiff completed only the substance abuse portion of a job readiness program before leaving the program.  (Tr. 898, 939, 972).

Plaintiff contends that reliable attendance at AA meetings, and the limited participation in the substance abuse program, cannot be viewed as equivalent to participation in full-time work, which the record shows is a particular stressor for Plaintiff.  For the same reasons, the reports of Plaintiff's therapist are not necessarily inconsistent with the opinions of Dr. Khalily.  Although the ALJ cited the fact that Plaintiff shops with

his mother as an example of his ability to function "independently," Plaintiff had not been shopping alone in at least five years.  (Tr. 60).  While the case law varies somewhat and the facts of each case are unique, there is some support for Plaintiff's position that an ability to participate in more limited daily activities is not necessarily equivalent to the ability to participate in sustained full-time work.  *See Gayheart,* 710 F.3d at 377-378 (holding that the ability to keep appointments and occasionally shop is not necessarily inconsistent with a marked impairment in social functioning, which pertains to the ability to perform activities on a sustained basis).

Defendant protests that Plaintiff's view merely reflects a differing interpretation of the opinion evidence, which is not grounds for reversal, so long as the ALJ's interpretation was within a reasonable "zone of choice."  Defendant reiterates the ALJ's focus on Plaintiff's relatively wide range of activities of daily living, which included being able to care for his ailing father (with whom he lives), shopping with his mother, using a computer, and using public transportation.  Plaintiff's mother confirmed that Plaintiff has no difficulties with self-care, cares for the family dog, does his own laundry, and helps with household chores, including cooking.  Defendant argues that Plaintiff's daily activities are inconsistent with the severe limitations found by Dr. Khalily and/or Mr. McClure.[4]

In addition to finding that Dr. Khalily's opinions to be inconsistent with the record, the ALJ found her opinions to be not well-supported, based upon several references in Mr. McClure's notes that encouraged Plaintiff to either volunteer or to apply for part-time

---

[4]Defendant further argues that Dr. Khalily's opinions were inconsistent with Dr. Lester's report.  However, the ALJ did not rely on that alleged inconsistency.  In fact, the ALJ deemed the opinions of Dr. Lester to be entitled to the same low weight that she gave to Dr. Khalily.

work. In August 2011, Mr. McClure was critical of Plaintiff's failure to more actively look for work "as he had promised to do." (Tr. 843). However, read in context, Mr. McClure's notes provide no support for the ALJ's interpretation that the counselor and/or Dr. Khalily believed Plaintiff could work full-time. Rather, the records reflect that Mr. McClure counseled Plaintiff to push himself toward *part-time* work.

Defendant additionally argues that the ALJ's opinion can be affirmed based upon Plaintiff's failure to follow prescribed treatment, including job seeking. (Doc. 12 at 12). Defendant relies heavily on the most critical note by Mr. McClure, dated December 2010, that Plaintiff "makes up excuses as to why he's not doing anything to better himself," and was not then attending "any NA Meetings with his sponsor," or getting along "with any of the sponsors he's had" or pursuing "job seeking." (Tr. 774). A January 2011 note was less critical, but still reflected conversation with Plaintiff concerning his failure to "fully" follow through "on the agreed upon treatment recommendations" including AA meetings. (Tr. 770). In March 2011, Plaintiff was "delinquent with establishing and maintaining a walking exercise program" to address weight gain. (Tr. 763). Defendant argues that the ALJ "reasonably discounted Dr. Khalily's assessment due to her failure to explain how Plaintiff's own resistance to employment factored into her assessment." (Doc. 12 at 14).

While Defendant is correct that regulations permit a non-disability finding when a claimant fails to follow prescribed treatment without a good reason, in this case the ALJ herself did not cite or rely upon that basis for denial. It is inappropriate in most instances for this Court to rely upon a Defendant's post-hoc rationalization for the denial

of a disability claim.[5]  Moreover, the earlier failure to attend NA and/or AA meetings – one of the alleged instances of "non-compliance" - was clearly remedied by Plaintiff over the course of his treatment.  In fact, Plaintiff's regular attendance at those meetings was cited by the ALJ partly as a basis for denying benefits.

As an additional basis for affirming the ALJ's rejection of Dr. Khalily's opinions, Defendant also cites the psychiatrist's failure to discuss Plaintiff's improvement over time.  The ALJ stated that records suggesting "some improvement" showed that Dr. Khalily was biased and trying to advocate for Plaintiff's application for benefits.  "Given these inconsistencies, it is not unreasonable to question whether Dir. Khalily is trying to be an advocate for the claimant regarding his claim for disability benefits even if the treatment notes and other evidence suggest some improvement." (Tr. 25). The Defendant significantly expands upon the ALJ's rationale in pointing out each possible instance of "improvement."

Some of Defendant's citations to "improvement" mischaracterize the record.  For example, Defendant suggests that Plaintiff's "overall symptoms" decreased to a 1/10, when in fact the records reflect that the decrease pertained to Plaintiff's "side effect severity." (Tr. 828, 837-838, 849).  The undersigned's review of the record reveals "improvement" that is much more nuanced than suggested by Defendant.  For example, while Plaintiff was working on reducing his angry outbursts from 7 times per week to 3-4 times per week, the same record reflects that Plaintiff's continued difficulties riding the bus made that activity potentially dangerous to other riders. (Tr. 935).

---

[5]Some exceptions to that rule exist, such as when the issue presented is whether a non-disability decision should be affirmed notwithstanding clear error, because the error is harmless or *de minimis* in light of other overwhelming evidence to support the non-disaibilty finding.  The instant case does not fall within that exception.

### b. Mr. McClure

In a footnote, the ALJ pointed out that Plaintiff's therapist, Michael McClure, M.A., submitted an identical assessment also dated May 2, 2012 (*see* Tr. 24 at n.1, citing Tr. 952-954).[6] Mr. McClure saw Plaintiff a total of 67 times for an hour or more each time, between October 2010 and July 2012. The ALJ's discussion of those opinions is relegated to a footnote, and dismisses the opinions both because Mr. McClure is not a qualified medical source, and for the identical reasons that she dismisses Dr. Khalily's opinions (as allegedly not well supported and as inconsistent with the record). The ALJ notes in particular that it was Mr. McClure who recommended that Plaintiff either pursue part-time work or volunteer hours.

Only an "acceptable medical source," generally a physician or psychologist, can be a treating source entitled to "controlling weight." *See* 20 C.F.R. §§404.1527(a)(2); 404.1527(c), 416.927(a)(2), 416.927(d). However, Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, provides that opinions from medical sources who are not "acceptable" medical sources should still be considered under the factors set forth in 20 C.F.R. §404.1527(c)(2), including but not limited to "how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *See Cruse v. Com'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)(citations omitted). While SSR 06-03p does not require an ALJ to explicitly explain his or her review of the opinion of a source like Mr. McClure who is not an

---

[6]Defendant is highly critical of Plaintiff's counsel having submitted two different copies of the identically dated assessment. Defendant implies impropriety in light of Plaintiff's failure to explain why "it took four months for [Plaintiff] to send in this same form with Dr. Khalily's signature, when she had ostensibly signed it the very same day." Because the ALJ expressed no similar reservations, the undersigned finds the criticism to be unwarranted, and presumes (as apparently did the ALJ) that the failure to submit the jointly signed copy on the earlier date reflects nothing more ominous than an administrative error.

acceptable medical source, the ALJ's rejection of Mr. McClure's opinions is suspect for the same reasons previously discussed with respect to the opinions of Dr. Khalily.  *See also Winning v. Com'r of Social Sec.,* 661 F.Supp.2d 807, 819 -820 (N.D.Ohio, 2009)(holding that the ALJ should have provided more explanation of the weight given to licensed social worker's opinion, whose opinions were consistent with treating psychologist).   In light of the need to remand on other issues relating to Plaintiff's alleged mental impairments, the ALJ should conduct a more complete assessment of Mr. McClure's opinions.

### 2.  Miscellaneous Errors

#### a.  Listing 12.04(C)(2) and Plaintiff's Mental RFC

Plaintiff additionally asserts that the ALJ erred by failing to find that he meets or equals Listing 12.04(C)(2).  Plaintiff relies upon the mental RFC opinions of his therapist and his treating psychiatrist to support his assertion that "even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." Episodes of decompensation are defined as

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.   [They] may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two) [or] inferred from medical records showing significant alteration in medication or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household)….

20 C.F.R. Pt. 404, Subpt. P, App.. 1 §12.00.   Plaintiff argues that the record shows that he experiences such episodes whenever his anxiety increases in any stressful situation,

because he gets angry and has to leave.  Although Defendant does not address this particular argument, the undersigned does not agree that Plaintiff clearly meets or equals Listing 12.04(C)(2).  The records presented reflect no episodes of decompensation of extended duration (two weeks or more), and there is little or no evidence of episodes of a more temporary duration that resulted from attempts at prior full-time work.  While acceptance of the treating psychiatrist's opinions in full *may* meet the requisite Listing standard, the undersigned finds reversal and remand for re-consideration of that opinion, rather than mandatory wholesale adoption of it, to be the appropriate course of action in this case.

Alternatively, Plaintiff argues that the evidence demonstrates that he does not have the RFC to perform any substantial gainful activity, based again on the report of Dr. Khalily and Mr. McClure.  The VE testified that some of the jobs to which he testified would require visual sight of other employees, which Plaintiff argues is the type of situation that has caused increased stress in the past.  (Tr. 55-56).  Defendant also fails to respond specifically to this argument.  For the reasons previously discussed, the undersigned does not find the record to be as one-sided on this issue as Plaintiff's argument would suggest, and therefore recommends remand for further review rather than directing an award of benefits.

### b.  VE testimony

Plaintiff briefly argues that the VE's testimony that Plaintiff could perform the jobs of industrial cleaner, floor waxer, shirt presser, and housekeeper conflicts with the hypothetical RFC that the ALJ described.  The ALJ's hypothetical expressly limited Plaintiff, due to his asthma, from being around environmental irritants such as fumes,

odors, dusts and gases.  (Tr. 20, 64).  Plaintiff's failure to question the VE at the hearing about the alleged incompatibility of Plaintiff's respiratory issues with the jobs to which the VE testified arguably amounts to a waiver.  On the other hand, because the undersigned recommends reconsideration of Plaintiff's mental limitations, and in the interest of justice given remand on those issues, the undersigned will recommend that the ALJ re-consider this issue as well.

Plaintiff includes two additional complaints: that the ALJ improperly used a "streamlined" hypothetical to describe Plaintiff's distractibility and anxiety, and how it impacts Plaintiff's limitations with respect to concentration, persistence and pace, and that the ALJ failed to adopt or include an RFC limitation concerning the number of days he might miss work.  Neither argument is more than summarily presented.  Because both assertions fall within the larger recommended remand for reconsideration of Plaintiff's mental RFC, the undersigned also finds no need to address them.

### III.  Conclusion and Recommendation

For the reasons discussed above, remand is required. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).

Accordingly, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) for reconsideration of the evidence consistent with this Report;

2. As no further matters remain pending, this case be **CLOSED.**

                                             _s/ Stephanie K. Bowman_
                                            Stephanie K. Bowman
                                            United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BRANDON E. STACEY,                                    Case No. 1:14-cv-160

      Plaintiff,                                             Dlott, J.
                                                      Bowman, M.J.

         v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21